IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 2:06-CR-167-MHT- DRB |
| | ) | [wo] |
| GREGORY SMOKE  and | ) | |
| BETTY ROBERTSON | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Suppression motions by co-defendants Gregory Smoke ("Smoke") and Betty Robertson ("Robertson") present  the same challenge to  evidence seized  pursuant to a search warrant which specified a purportedly erroneous address.[1]  Following a consolidated  evidentiary hearing and due consideration of briefs, arguments, and applicable law, the Magistrate Judge concludes that the search warrant included sufficient particularity for the home searched; consequently, the suppression motions should be denied.[2]

### I.   FACTUAL FINDINGS

On January 6, 2006,  Millbrook Police Department Sergeant Thomas Reid ("Sgt. Reid"), then assigned  to the Central Alabama Drug Task Force ("CADTF"),  secured a search warrant for an Elmore County mobile home  identified in his Affidavit as *2112 Crenshaw Road - Wetumpka, Alabama.*  The Affidavit followed  "a long and extensive drug investigation for the [preceding] few weeks of several individuals located in the Crenshaw area of Elmore County," and it named  Smoke

---

[1]Defendant Smoke's *Motion to Suppress* (Doc. 30, Aug. 16, 2006, "*Smoke Mot.*" ) and Defendant Robertson's *Motion to Suppress* (Doc. 41, Aug. 28,2006, "*Robertson* Mot.")

[2]Because the official transcript of the hearing on September 29, 2006, had not been filed when the undersigned commenced deliberations, references herein to the unofficial draft made available solely for the court's reference ("Dr. TR.") may differ slightly from the filed transcript.

as "an individual who is a subject in this investigation;" it did not name Robertson at all.

Sgt. Reid detailed the following "probable cause" facts for the location of crack cocaine and related contraband " **at the residence of Gregory Steve Smoke located at 2112 Crenshaw Road, Wetumpka, Alabama**":

> During the course of this investigation CADTF has made multiple controlled buys of crack cocaine from several individuals, including **Gregory Steve Smoke at 2112 Crenshaw Road,** through the use of a confidential informant. This confidential informant has shown to me personally that he/she is knowledgeable of the appearance of illegal narcotics and can specifically identify crack cocaine. On each of these controlled buys other amounts of crack cocaine were observed. During the course of the investigation it has been determined through eyewitness confirmation from the confidential informants that **crack cocaine has been sold and stored by Gregory Steve Smoke at the above mentioned address. Said address being 2112 Crenshaw Road, Wetumpka, Alabama**. This confidential informant has been proven reliable by assisting CADTF in undercover buys of illegal narcotics in the past. **This confidential informant has been to the above mentioned address within the past seventy-two hours** under the direction, surveillance, and control of CADRF agents. During which time he/she purchased illegal narcotics, to wit: Crack Cocaine from Gregory Steve Smoke at said address.[3]

He supplemented the street address for Smoke's house with these directions and description:

> Directions are as follows:   2112 Crenshaw Road - Wetumpka Alabama: From Alabama Hwy 111. Proceed north on Al. Hwy 111 to the north end intersection of Crenshaw Road. Turn left onto Crenshaw Road. Said Residence (2112 Crenshaw Road) will be located on the left. Said residence is described as being a light colored (tan or beige) doublewide mobile home with green colored window shutters and a front porch with green colored railings.

Defendants sought to buttress their contention that officers wrongly executed the search warrant at 2110 Crenshaw Road, a house claimed by Robertson,[4] with photographs from Federal

---

[3]*Gov't Ex*.1 (emphasis added)

[4]*See* Doc. 30 at 2-3 and Doc. 41 at 2-3, wherein Defendants aver in relevant part:

(continued...)

Defender investigator Daniel H. Carmichael ("Inv. Carmichael"). The United States presented

relevant testimony from Sgt. Reid as well as the lead CADTF officer who executed the search

warrant, Chilton Co. Sheriff's Department Sergeant Jonathan Benson ("Sgt. Benson").

The evidence supports the following findings of facts which will guide the legal analysis:

**1. *The Affidavit recited a physical description for the home to be searched which matched the location of drug buys specified as probable cause for the warrant. Officers executed the search warrant at the same location.***

Sgt. Reid reported a confidential informant's "controlled narcotics purchases or buys [from]

one location" – the mobile home described in the Affidavit – on these dates: from Smoke on

December 3 and 20, 2005, and from Robertson on December 6 and 22, 2005, and on January 5,

2006.[5] Officers monitored the purchases as follows:

> The C. I. was given money, outfitted with digital recording devices, sent to the
> residence. We would follow the C. I. to the area of the residence. Once purchase
> was made they would meet us back at another location.[6]

"Each of these buys, did . . .take place", according to Sgt. Reid, "at the tan or beige double wide

---

[4](...continued)
>       2112 Crenshaw Road is indeed the residence of Gregory Smoke. It
>       is not, however, a light colored double-wide trailer with green
>       shutters located on the left side of Crenshaw Road. . . . The officers
>       searched a light-colored, double-wide trailer with green shutters, but
>       that residence is 2110 Crenshaw Road, not 2112, and is not a
>       residence owned by Gregory Smoke. . . . The residence was actually
>       owned by Betty Robertson, a girlfriend of Gregory Smoke, and while
>       Mr. Smoke occasionally spent the night there, he did not live there.

[5]Dr. TR. 5: 15-17, 6:15-16, 11: 20-21, 12, 13:1-8.

[6]Dr. TR. 9: 17-20.

mobile home" he described in his Affidavit.[7]    Both defendants were present for some of these

controlled buys but no testimony isolated those dates.[8]

Shown photographs taken by Inv. Carmichael, Sgt. Reid readily identified the same house

described in his Affidavit as "[t]he home where we served the search warrant and also purchased the

drugs from."[9] The wide-angle, front-view photographs of the house (*Def. Smoke's Exs.* 4 and 5) do

not disclose any address numbers or mail boxes.    Sgt. Reid repeated his opinion that 2112

Crenshaw Road is the correct address for this house.   Sgt. Benson identified the same photographs

as the residence he actually searched.[10]


***2. Sgt. Reid matched 2112 Crenshaw Road with the mobile home described in his Affidavit by reference to law enforcement records.   No evidence establishes clearly that 2110 Crenshaw Road is the correct address for this mobile home.***

Sgt. Reid explained as follows why he recorded 2112 Crenshaw Road as the Wetumpka

location for the controlled buys:

> Q    And each of these sales, did you list a residence where they took place on
> your incident report?
>
> Q    Yes.
>
> Q    And what residence did you list?
>
> A    Twenty-one twelve Crenshaw Road.
>
> Q    From your observation and your investigation, who lived at the residence

---

[7]Dr. TR. 9:21, 10: 1-3.

[8]Dr. TR. 13: 9-11.

[9]Dr. TR. 20:17-20; *see Def. Smoke's Exs.* 1, 2, 4, 5, 6.

[10]Dr.TR. 46: 19-21, 47: 1-12.

that you described as twenty-one twelve Crenshaw Road?

A       Gregory Smoke and Betty Robertson.

Q       And what did you base this on?

A       C. I.'s information that she made contact with both parties there at the house and the Incident Offense Report, arrest reports of Greg Smoke's.

Q       And from the information that was provided during the actual buy, did it appear that both of them lived there?

A       Yes.[11]

He did not investigate 2110 Crenshaw Road because all information reported to him indicated that Smoke lived at 2112 Crenshaw Road.[12] Shown a photograph of a mail box marked 2112 Crenshaw Road (*Def. Smoke's Ex.* 7 ), Sgt. Reid denied having seen it at the site.[13] The "2112" numbers on the mailbox appear hand-written at the top of printed letters, "G Smoke", followed by a printed label for the number "2" on the second line and printed labels for "Crenshaw Rd" on the third line. Only the mailbox and the adjacent road appear on the photograph.

Inv. Carmichael photographed the mailbox about three weeks prior to the suppression hearing when he met with Robertson inside the 2110 Crenshaw Road home she claimed as hers and as the home actually searched. He also photographed a mailbox with a hand-written 2110 number and no name (*Def. Smoke's Ex.* 8) and Robertson's home. (*Def. Smoke's Exs.* 1, 2, 4, 5, 6). Inv. Carmichael testified that the 2110 mailbox depicted in Def. Smoke's Ex. 8 is located at the end of

---

[11]Dr. TR 13: 13-22, 14:1-4; see also Dr. TR. 8:20-22, 9:1-3.

[12]Dr. TR 25: 12-22; 26:1. Def. Robertson's cross-examination elicited that on January 4, 2006, two days before his affidavit, Sgt. Reid secured criminal history reports for Robertson and Smoke which stated , based on their Alabama driver's licenses, a 2110 address for Robertson and a 2112 address for Smoke on Crenshaw road. ( Dr. TR. 26-33; *Def. Robertson's Exs.* 1 and 2.)

[13]Dr. TR. 20.

a driveway leading directly to Robertson's mobile home, pictured in Def. Smoke's Ex. 1, with the front end of a car parked to the right at the beginning of the driveway. Robertson identified for the investigator the 2112 Crenshaw Road mobile home which belongs to Smoke, shown in his photographs admitted as Def. Smoke's Exs. 9, 10, 11, and 12, and Inv. Carmichael placed the 2112 mailbox in Def. Smoke's Ex. 7 at the end of a driveway leading from that house.[14] Neither Sgt. Reid nor Sgt. Benson could identify the house Robertson identified as 2112, and both denied that it factored at all in their drug investigation. [15]

After notice of Defendants' suppression claim that officers searched 2110, instead of 2112, Crenshaw Road, Sgt. Reid examined Elmore County's land assessment records and its E911 emergency maps. He maintained that both records identify the home officers searched as Smoke's home at 2112 Crenshaw Road, and moreover, that they do not reflect any Crenshaw Road address numbered 2110. *See* Dr. TR. 15-16, 36:8-21. Consequently, the United States refused to concede any error by Sgt. Reid in reporting the address. In fact, the assessment records referenced (*Gov't Ex.* 2) do not confirm Smoke's actual ownership of the property; in relevant part, the data reports:

| | |
|---|---|
| Owner: | Johnson Lois Crenshaw et al |
| Owner: | C/O Gregory Smoke |
| Property Address: | Crenshaw Rd 2112 |
| Mailing Address: | 2112 Crenshaw Rd Wetumpka, AL 36092 |

Whether assessment records include similar "assessment information" for 2110 Crenshaw Road

---

[14] Dr. TR. 61-66.

[15] Dr. TR. 37: 17-22, 38: 1-17 (Sgt. Reid); 46: 19-21, 47: 1-12 (Sgt. Benson).

simply cannot be determined from *Gov't Ex. 2*.  Sgt. Reid did identify the mobile home searched,

however, as the home which is displayed photographically on the E911 Map (p. 5 of the five-page

exhibit) in response to a request for the house at 2112 Crenshaw Road. [16]

***3.  Sgt. Reid brought Sgt. Benson to the site of the mobile home described by physical appearance
in his Affidavit and specified it as the residence to be searched.  In executing the search warrant, Sgt.
Benson relied solely and reasonably on his personal knowledge of the home pointed out by Sgt. Reid.***

After identifying Sgt. Benson as the CADTF member assigned to execute  the search

warrant, Sgt. Reid described their interaction in preparation for the search:

> Q      Before he executed the search warrant, what did you  do to make sure that
>
> the search warrant would be  executed at the proper place?
>
> A      We drove by the residence and I pointed it out to  him.
>
> Q      You actually pointed the place that you wanted  searched?
>
> A      Right. [17]

Sgt. Benson's testimony confirmed that he relied solely on  Sgt. Reid's on-site identification

of the house to be searched:

> Q      Before you executed that search warrant, did you  meet with Sergeant Reid
> and discuss the case with him?
>
> A      I did.

---

[16]Dr. TR. 18:7-18.

[17]Dr. TR. 10: 12-19.

Q       Did he give you the background of his investigation?

A       He did.

Q       Did he show you the search warrant and give you the address?

A       Yes.

Q       had limtoshowingyouthesearchwarantthathehaddotainedandgivingyoutheadkes;ddheob anyhigdetoshowyou whatresidene he wanted searched?

A       Yes. I wasn't very familiar with the residence, he actually drove by and pointed to the residence and said that's the house.

Q       Okay. And disregarding what the address is for a moment, did the description he gave you in the search warrant, such as the color of the mobile home, the color shutters that happened type of thing, did that match the description of the residence that you searched?

A       Yes.

Q       And did it match the description of the residence that he actually showed you and pointed out to you?

A       Yes.[18]

Sgt. Benson testified clearly that he did not see any address numbers marked on either the residence to be searched or the mailbox, and the following exchange with Robertson's counsel highlights the reasonableness of his reliance on Sgt. Reid's identification of the house:

Q       Did you do anything during the execution of the search warrant to actually look for an address on that particular residence?

A       Yes, we did a ride-by and did a video. I did not see the address marked on the mailbox. That's why we went by it, videotaped it and he pointed it out and said this is the one I want you to execute the search warrant on.[19]

---

[18]Dr. TR. 42: 14-22; 42:1-12.

[19]Dr. TR. 54: 6-12.

*4. When arrested following their indictments, the defendants were found together inside the same mobile home where they were located when officers executed the search warrant.*

When officers executed the search warrant, they found Defendants inside the mobile home asleep in the same bed. Smoke identified Robertson as his wife, he neither said nor did anything to deny his ownership of the house, and instead insisted on cooperating with officers. It is undisputed that Sgt. Benson did not solicit any statements from Smoke but provided *Miranda* warnings only when Smoke persisted:

> Q      When he told you he wanted to cooperate, did you at any time read him his *Miranda* warnings?
>
> A      I did. I also instructed him he probably needed to speak with Sergeant Reid and he was pretty persistent. I advised him of his *Miranda* rights and that's when he made the statement to me.
>
> Q      What did he say to you?
>
> A      He said the guns are mine, the dope is mine and my wife has nothing to do with it.
>
> Q      Okay. And when he said these things, had y'all just found guns and drugs there in the residence where he was?
>
> A      Yes.[20]

Approximately six months after executing the search warrant, officers returned to Crenshaw Road in the early morning hours to execute arrest warrants, and they located both defendants inside

---

[20]Dr. TR. 43:15-21, 44. The contraband seized triggered the Indictment filed July 11, 2006, charging both defendants with conspiring to possess with intent to distribute more than 5 grams of crack cocaine (count 1); aiding and abetting each other in the knowing possession of cocaine base with intent to distribute (count 2) and aiding and abetting each other in the possession of six firearms in furtherance of drug trafficking (count 3). A fourth count charges Smoke, an ex-felon, with unlawful possession of the firearms taken from the residence.

the same mobile home searched, again asleep in the same bed.[21]

## II.  DISCUSSION

### A.    Analytical Framework

The parties dispute the proper analytical query:  for Defendants, it is the propriety of the warrantless search of  Robertson's residence, and for  the United States, it is the sufficiency of the search warrant  issued for Smoke's residence.   The court could accept Defendants' contention only if it ignored undisputed evidence that the drug task force officers who executed the search, led by Sgt. Benson, relied solely on the search warrant secured by Sgt. Reid.

The court cannot resolve with confidence the conflicting evidence on the fact which undergirds Defendants' contention:  that the 2112 Crenshaw Road address specified in the search warrant properly as Smoke's street address  is not the house actually searched.   Only Defendants presented evidence suggesting that officers mistakenly searched Robertson's residence at 2110 Crenshaw Road and the entirety of that evidence is traceable solely to Robertson's self-serving reports to a defense investigator.  Defendants' photographs of the mailboxes associated with each home  – taken about nine months after Sgt. Reid prepared his affidavit – raise more questions than they resolve.  Only the "2110" number is visible on its mailbox while the mailbox for "2112" appears with "Crenshaw Road" and "G. Smoke's name.

Sgt. Benson's testimony that he never saw an address on a mailbox raises a reasonable question whether the "2110" mailbox existed during the investigation which preceded the search

---

[21]Dr. TR.  58.

warrant. Defendants offered no evidence that their investigator's photographs taken in September

actually depicted the location and appearance of mail boxes which existed when narcotics

investigator targeted their investigation on Defendants in December 2005 and January 2006. Nor

do the photographs admitted illustrate clearly the location of both homes in relationship to the

mailboxes or in relationship to the driveways purportedly leading to each mailbox. Adding to this

court's reticence to embrace Defendants' factual assumption is Sgt. Reid's undisputed testimony that

the county's emergency 911 map displays the house actually searched as 2112 Crenshaw Road and

does not display a house at all for 2110 Crenshaw Road.

    While the court declines to find as a conclusive fact that officers searched 2110 instead of

2112 Crenshaw Road, it can readily assume this proffered fact in order to analyze the question of law

dictated by the Eleventh Circuit in *United States v. Burke*, 784 F.2d 1090 (11th Cir.), *cert. den.*, 476

U.S. 1174 (1986): did officers execute a search warrant which sufficiently particularized the

location actually searched? Warrants purportedly executed at the wrong place – whether due to

errors in the numbered addresses specified, ambiguities or non-specific language in describing the

place to be searched – implicate the Fourth Amendment requirement that "[t]he right of the people

to be secure in their . . . houses, . . . against unreasonable searches and seizures, shall not be violated,

and no Warrants shall issue, but upon probable cause, . . . *and particularly describing the place to be*

*searched*, . . ." U.S. Const.,amend. IV. (*emphasis added*).

    The United States Supreme Court deems it "enough if the description is such that the officer

with a search warrant can, with reasonable effort [,] ascertain and identify the place intended."

*Steele v. United States*, 267 U.S. 408, 503 (1925); *Maryland v. Garrison*, 480 U.S. 79, 83 (1987)

("The Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one 'particularly describing the place to be searched and the persons or things to be seized.")In *Burke*, the Eleventh Circuit provided further guidance which must be appreciated in factual context. The supporting affidavit described Burke's house, the object of the search, as follows:

> 38 Throop Street, is a two-story red brick building, trimmed in a reddish-brown paint with a shingled roof and three adjacent apartments, with apartment 840 being the far left apartment at that address looking at it from the front.

Burke actually resided in the Carver Homes Housing Project at 48 Troup Street, apartment 840, Atlanta, Georgia, and at a pre-execution meeting of agents in the parking lot of the Housing Project, an officer volunteered his prior visit inside Burke's apartment and identified Burke's apartment building. In all discussions prior to the search the involved agents had referred to "Troup Street", not "Throop Street." The agent executed the search warrant at, and seized disputed evidence from, " 48 Troup Street, apartment 840."

On the government's appeal from the district court's suppression of the evidence, the court of appeals fashioned the analytical framework which controls the motions by Defendants Smoke and Robertson:

> A warrant's description of the place to be searched is not required to meet technical requirements or have the specificity sought by conveyancers. The warrant need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched on his authority. An erroneous description of premises to be searched does not necessarily render a warrant invalid. The Fourth Amendment requires only that the search warrant describe the premises in such a way that the searching officer may "with reasonable effort ascertain and identify the place intended." *United States v. Weinstein*, 762 F.2d 1522, 1532 (11th Cir. 1985) (citations omitted)

*Burke*, 784 F.2d 1092.

In finding sufficient the warrant's description of the place to be searched, the *Burke* court noted that no "Throop" Street in Atlanta and that "the search warrant contained a detailed physical description of the building, minimizing the possibility that an apartment in any building other than the correct one would be searched. *Id.*, (*citation omitted*). As another fact which "insured that there was no possibility the wrong premises would be searched", the court explained that an officer who "knew precisely which premises were to be searched" did "point[] out the correct apartment to the executing officer:"

> In evaluating the effects of a wrong address on the sufficiency of a warrant, this court has also taken into account the knowledge of the officer executing the warrant even where such knowledge was not reflected in the warrant or in the affidavit supporting the warrant. In *United States v. Weinsten*, [762 F.2d 1522, 1532-33 (11th Cir. 1985)], where a search warrant failed to specify correctly the entrance leading to the premises to be searched, we considered it significant that the agent conducting the search had been to the premises before and that he had no doubt which door gave access to the correct premises.

*Id.* at 1093.

This court has not uncovered, and Defendants have not identified, any case law which undermines *Burke* as the analytical framework for the Fourth Amendment inquiry in this case. *See, e.g., United States v. Ellis*, 971 F.2d 701, 703 (11th Cir. 1992); *United States v. Ofshe*, 817 F.2d 1508, 1514 (11th Cir. 1987); *Williams v. Alford*, 647 Supp. 1386, 1389 n. 5 (M.D. Ala. 1986).

### B.    Legal Analysis

The material facts lead inescapably to the conclusion that Sgt. Benson and his task force agents executed the search warrant secured by Sgt. Reid at the precise location described and

intended. Sgt. Reid's affidavit specified the place to be searched by three references: a street address, directions from Alabama Highway 11, and physical appearance. No evidence suggests any inaccuracy in the directions stated: "*Proceed north on Al. Hwy 111 to the north end intersection of Crenshaw Road. Turn left onto Crenshaw Road. Said Residence (2112 Crenshaw Road) will be located on the left.*" Nor do Defendants dispute that officers searched the residence which matched the physical appearance included in the Affidavit: "*a light colored (tan or beige) doublewide mobile home with green colored window shutters and a front porch with green colored railings.*"

Assuming *arguendo* the inaccuracy of 2112 Crenshaw Road as the numbered address, another fact relegates the mistake to a non-dispositive technical error: Sgt. Reid described in the affidavit directions to, and the physical appearance of, the same house from which Defendants sold illegal narcotics to an undercover agent on five occasions between December 2005 and the day before Sgt. Reid signed his affidavit on January 6, 2006. Defendant Robertson argued strenuously the absence of any evidence from which the court can conclude that the controlled buys were in fact purchased from the mobile home searched. The argument is amply refuted by Sgt. Reid's testimony describing the "controlled" monitoring used and by testimony from both Sgt. Reid and Sgt. Benson that no controlled buys occurred from, and their drug investigation never targeted, the home identified by Defendants as the match for 2112 Crenshaw Road and Smoke's actual residence (pictured in *Def. Smoke's Exs.* 9, 10, 11, 12).

In addition to the affidavit's specifications regarding the particular place to be searched, the lead agent who executed the search warrant, Sgt. Benson, had been taken to the site by Sgt. Reid, who pointed out to him the house to be searched. No evidence undermines these officers' consistent

testimony about this site visit prior to execution of the search warrant.  Their testimony is especially credible in light of Sgt. Benson's explanation that as a Chilton County Sheriff's employee, he had no prior familiarity with the Crenshaw Road area in Elmore County and found no mailbox which clearly identified the house.

Because Defendants' drivers' licenses specified different addresses – 2110 for Robertson and 2112 for Smoke – and officers allegedly monitored controlled drug buys involving both defendants, Robertson argues that Sgt. Reid should have investigated further the actual locations for both addresses.  The argument is directed primarily to the "good-faith exception" to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984).  The court need not extend this analysis to *Leon,* however,  since the warrant satisfies Fourth Amendment concerns.

Sgt. Reid testified credibly that the drug task force's  "long and extensive investigation of several individuals located in the Crenshaw area of Elmore County" attributed to Smoke a principal role.   Whether the undercover agent pinpointed Smoke or Robertson as the seller for the five controlled buys preceding the search, sufficient evidence establishes that all the transactions occurred from the same house, and on some occasions, in the presence of both defendants.  Before executing the search warrant,  Sgt. Benson visited the site with Sgt. Reid, who  pointed out the house to be searched and identified it as the house from which the relevant buys had occurred.   Sgt. Benson testified credibly and without impeachment that he returned to the very house identified by Sgt. Reid to execute the search warrant; that house also matched the appearance of the house described in the affidavit.

Neither officer searched for, or relied on,  mailbox numbers  for the address to be searched;

15

instead, officers intended to search, and did search, the place where controlled drug buys had occurred, believed reasonably that Smoke lived there, and assigned to that address the street number shown on law enforcement records for Smoke. Support for the reasonableness of their belief comes, in part, from these facts: (a) officers executing the search warrant found Smoke at the residence – sharing a bed with the co-defendant he then identified voluntarily as his wife; (b) Smoke's volunteered actions and statements when located at the house were not inconsistent with his ownership of the home; and ( c ) officers executing the post-indictment arrest warrant found Smoke at the same residence – again sharing a bed with his co-defendant. By contrast, no evidence places Smoke – at any relevant time – inside the house Defendants now assert as the actual match for 2112 Crenshaw Road.

In sum, this court concludes, that the search warrant satisfied the particularity requirements of the Fourth Amendment because it "described the premises to be searched with sufficient particularity to direct the officers to the correct [mobile home], to confine the officers' examination to that [mobile home], and to place the occupants [Defendants Smoke and Robertson] on sufficient notice of the officers' authority to search the premises." *Burke,* 784 F.2d at 1093.

### III.  CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the *Recommendation of the Magistrate Judge* that Defendant Smoke's *Motion to Suppress* (Doc. 30) and Defendant Robertson's *Motion to Suppress* (Doc. 41) each be DENIED.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation

not later than October 20, 2006. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 10th day of October, 2006.

/s/ **Delores R. Boyd**
DELORES R. BOYD
UNITED STATES MAGISTRATE JUDGE